UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

THE ESTATE OF DOMINIQUE
McCOY by and through its Court
Appointed Administrator
WILLIAM McCOY,

                          Plaintiff,

v.

COUNTY OF SAN DIEGO, et al.,

                          Defendants.

Case No.:  22-cv-1724-BTM-SBC

**ORDER (1) GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT (ECF NO. 111); (2) GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT (ECF NOS. 113 & 134); and (3) DENYING MOTION FOR SUMMARY JUDGMENT (ECF NO. 117)**

Pending before the Court are motions for summary judgment filed by (1) Defendant County of San Deigo (ECF No. 111); (2) Defendants Crystal Reeves, Deputy Daniel Cheung, Lieutenant Desan Tyson, Corporal Jacob Saelens (collectively, the individual defendants) (ECF Nos. 113 & 134); and (3) Plaintiff Estate of Dominique McCoy (ECF No. 117).  For the reasons discussed below, the County's motion is granted in part and denied in part; the individual defendants' motion is granted in part and denied in part; and Plaintiff's motion is denied.

## BACKGROUND

This case arose from the tragic death of Dominique McCoy.  On December 23, 2021, McCoy was pulled over for driving a car with a stolen or lost license plate.  McCoy was arrested on a probation warrant and, after he was searched, for possession of a controlled substance.

McCoy's probation warrant stemmed from his guilty plea for selling a controlled substance in October 2019.  He was sentenced to 180 days in jail and three years of probation.  The probation warrant he was arrested under was issued in June 2021.  Effective January 1, 2021, a California statute, AB 1950, reduced many probation terms to two years.  In November 2021, pursuant to AB 1950, a state court judge terminated McCoy's probation and recalled the outstanding probation violation warrant against him.  Thus, when McCoy was arrested on December 23, 2021, the June 2021 probation warrant was recalled and should have been terminated.  However, due to an error by a Superior Court clerk, the warrant was not terminated.

McCoy was nonetheless detained at the San Diego Central Jail by the County of San Diego on the probation warrant.  McCoy was classified as a low-risk inmate, at "level 2."  The County's security classification system, which ranges from 6 (the most dangerous inmates) to 1 (the least), aims to separate violent inmates from non-violent inmates.  On December 29, 2021, a hearing was held before a state court judge on McCoy's charges.  The judge ordered McCoy released.  Before releasing McCoy, however, he was placed in a cell with John Medina.

Medina was arrested on December 26, 2021, for felony animal abuse, assault with a deadly weapon, and violence against a child.  Medina killed his family's dog and drugged and tried to stab his brother.  Medina was a high-risk inmate, at "level 4."  Placed in the same cell, within about an hour, Medina attacked and killed McCoy.  They were allegedly fighting over the lone mattress in the cell.

22-cv-1724-BTM-SBC

Medina and McCoy were placed in the same cell under the County's COVID-19 protocols.  Under those protocols, newly booked inmates could be housed together to be quarantined from the other inmates.  Here, for example, McCoy was placed in quarantine on December 24, two days after he entered the jail.  Medina was placed in quarantine on December 26, the day he was jailed.  This quarantine protocol was considered medical housing, which allowed for higher risk inmates to be housed with lower risk inmates.

Plaintiff's second amended complaint asserts causes of action (1) against the County under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), for violations of the Fourth, Eighth, and Fourteenth Amendments; (2) against the individual defendants for deliberate indifference under the Eighth and Fourteenth Amendments; (3) against the County for failing to properly train and supervise; and (4) against all the defendants for wrongful death.  Plaintiff claims that the defendants were deliberately indifferent to McCoy's constitutional rights by placing McCoy in a cell with Medina.  Plaintiff claims that the County's custom or practice of ignoring the security classification system—and placing violent inmates with non-violent inmates—foreseeably resulted in Medina killing McCoy.

The parties now move for summary judgment.  Plaintiff claims that the County is liable as a matter of law for ignoring its own security classification system.  Plaintiff also argues it is entitled to judgment on liability against Deputy Daniel Cheung for placing McCoy in a cell with Medina.

The County claims that (1) its policies did not amount to deliberate indifference; (2) it was not responsible for failing to clear the warrant underlying McCoy's arrest; (3) there is no evidence that it failed to properly train its employees; and (4) it is entitled to immunity on the wrongful death claim.  The individual defendants maintain that they are entitled to summary judgment because (a) they were not reckless, (b) McCoy's death was not foreseeable, (c) they are entitled to qualified immunity, and (d) the wrongful death claim lacks merit.  Corporal Jacob

22-cv-1724-BTM-SBC

Saelens also raises a statute-of-limitations defense.  The Court held oral argument on March 30, 2026, at which Plaintiff agreed to dismiss count three (failure to train).

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *accord Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997) ("Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law.").  Material facts "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the opposing party.  *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

## DISCUSSION

### A.    Preliminary Matters

Before discussing the merits of the several motions, there are two preliminary matters that the Court needs to rule on.  First, this decision on the pending motions may discuss certain facts that are part of sealed documents.  There is a public right to know what the Court has considered in deciding the merits of claims, and evidence should not be sealed unless there is a compelling need for confidentiality.  *liner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) ("In keeping with the strong public policy favoring access to court records, most judicial records may be sealed only if the court finds compelling reasons." (citation and quotation marks omitted)).  In this case, involving a murder by an inmate of another inmate who should not have been in custody on the day he was killed, there is a heightened public interest in what went wrong.  There is no

22-cv-1724-BTM-SBC

compelling interest for confidentiality that overcomes that public interest. Therefore, the recitation of facts herein is an exception to any sealing orders.

Second, the Defendants have moved to have the expert opinions by Gary Raney (Doc. 109-1) and Dr. Homer Venters (Doc. 110-1) declared inadmissible. The Court will rule on the motions notwithstanding that defense counsel did not comply with my Chamber's Rule as to objections to evidence in motions for summary judgment.  Chamber's Rules at 2.  The Court's ruling is limited to consideration of the expert opinions on the motions for summary judgment.  It does not apply to what will be admissible at trial.  That can be determined on a motion in limine before trial.

As to the opinions of Mr. Raney, the Court finds him eminently qualified on the subject of the opinions.  The Court finds that the requirements of Federal Rule of Evidence 702 have been met for all but the following opinions.  Raney's opinion as to Saelens's intent on not providing a separate mattress for Medina when he placed him in the cell is not based on his expertise but rather on his analysis of the evidence.  As such, it would be similar to an attorney's argument and not properly considered as expertise helpful to the jury to understand the evidence.  The same analysis applies to Raney's opinion that Saelens's violation of Title 15 caused McCoy's death.  Finally, Raney's opinion that having level 2 and 4 inmates in the same cell violated Title 15 is his conclusion and not based on any cases or administrative authorities.  Therefore, it is not based on his expertise and is based on mere argument.  The Court will not consider those three opinions when deciding the motions for summary judgment.  The Defendants' motion to exclude the opinions of Gary Raney is GRANTED IN PART and DENIED IN PART without prejudice to reconsideration in a motion in limine after the pretrial conference.

The Court also finds Dr. Venters eminently qualified to offer his opinions, and they are admissible under Federal Rule of Evidence 702, except the

22-cv-1724-BTM-SBC

following two opinions.  The opinion that the Defendants did not follow Title 15 when evaluating Medina is not based on his expertise with Title 15.  The opinion that Medina was not placed in COVID quarantine is speculative and not based on actual facts.  The Court will not consider those two opinions in deciding the motions for summary judgment.  The Defendants' motion to exclude the opinions of Dr. Venters is GRANTED IN PART and DENIED IN PART without prejudice to reconsideration on a motion in limine after the pretrial conference.

**B.    Plaintiff's *Monell* claim.**

"A government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  A plaintiff can succeed under *Monell* by showing that a government entity's policy (1) "amounts to deliberate indifference to the plaintiff's constitutional right" and (2) was the "moving force" behind the deprivation of that right.  *Id.* (citation omitted).

Here, Plaintiff alleges that the County had a policy of placing violent offenders in cells with nonviolent offenders, and that the policy was the moving force behind the deprivation of McCoy's constitutional right to be free from violence from fellow inmates.  *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc) (recognizing the "right to be free from violence at the hands of other inmates"); *accord Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." (quotation marks and citation omitted)).

**i.    Plaintiff is not entitled to summary judgment**.

The Court must deny Plaintiff summary judgment on the *Monell* claim because whether the County was deliberately indifferent is a dispute of fact for trial.  The County allowed mixed-classification security housing because of the COVID-19 pandemic.  COVID-19 posed a great danger to inmates, and the failure

22-cv-1724-BTM-SBC

to protect inmates from the virus could have led to liability for the County. *See generally Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023) (noting how prison officials were aware of COVID-19's danger and could be found liable for transferring inmates infected with the virus to another facility).

The County's goal in creating the system that allowed Medina and McCoy to be housed together may have been to help protect inmates. Plaintiff's expert even acknowledged that mixed-classification security housing for medical purposes is essentially a common practice. A finding of deliberate indifference as a matter of law would be inappropriate and unwarranted. *See generally Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994) (noting that the duty to ensure reasonable safety for inmates must "incorporate[] due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions" (quotation marks and citation omitted)); *Helling v. McKinney*, 509 U.S. 25, 36-37 (1993) (noting that the inquiry into deliberate indifference of prison authorities should "consider arguments regarding the realities of prison administration"). Plaintiff is denied summary judgment on its *Monell* claim.

### ii. The County is not entitled to summary judgment as to the housing of McCoy and Medina.

When Medina killed McCoy, Medina was facing serious charges—felony animal abuse, assault with a deadly weapon, and violence against a child. McCoy was awaiting his release. Allowing Medina to be placed in a cell with McCoy certainly created a risk and danger to McCoy. The County's policy allowed high-risk inmates to be placed with low-risk inmates. A rational jury could find that mixing high- and low-security inmates created an obvious danger to low-security inmates. That of course is exactly why the County usually separates high- and low-security inmates.

A rational jury thus could find that the County was deliberately indifferent to McCoy's constitutional right to be free from violence from other inmates. *See Long*

22-cv-1724-BTM-SBC

*v. County of Los Angeles*, 442 F.3d 1178, 1190-91 (9th Cir. 2006) ("Whether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question." (citation omitted)). A rational jury could also find that the policy was a moving force behind McCoy's death. Medina's ability to murder McCoy may have been "closely related" to the County's jail housing system. *See id.* at 1190 (explaining that causation for a *Monell* claim is measured by whether the policy is "closely related to the ultimate injury" (citation omitted)).

Because Plaintiff may be able to prove that the County's policy (1) amounted to deliberate indifference of McCoy's right to be free from violence from other inmates, and (2) was a moving force behind McCoy's death, the County is not entitled to summary judgment as to its jail housing policy.

### iii.    The County is entitled to summary judgment as to recalled probation warrants.

Plaintiff claims that the County had a policy of inaction for probation warrants recalled under AB 1950. In Plaintiff's view, when a probation warrant was recalled by a state court judge, the County should have confirmed that the warrant was then in fact terminated in the database. Plaintiff claims that the Superior Court's failure to terminate recalled warrants was a widespread and well-known problem, such that the probation department must have been aware of the problem. If the County had a system in place to check whether recalled warrants were actually being terminated, the theory goes, McCoy never would have been arrested, and thus McCoy would not have been in custody to be placed in a cell with Medina.

A *Monell* claim can be based on a policy of inaction. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) ("A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations."). If policy makers are aware of a widespread problem and fail to act, that can constitute a policy of inaction under *Monell*. *Id.*; *Fairley v. Luman*, 281

F.3d 913, 918 (9th Cir. 2002) (per curiam).  Here, the relevant date for the County's alleged policy of inaction is the day McCoy was arrested, that is, December 23, 2021.  Thus, to show that the County had a policy of inaction for the failure to check whether recalled warrants were being terminated, Plaintiff needs evidence showing that there was a widespread issue of warrants being recalled but not terminated before December 23, 2021.

Plaintiff, however, lacks sufficient evidence showing that—as of December 23, 2021—there was a widespread and well-known problem of warrants being recalled but not terminated.  Plaintiff's evidence has no timeline, so a jury would be forced to speculate whether the problem was in fact widespread and well-known before December 23, 2021.  Plaintiff's evidence would not allow a rational jury to find that the problem was widespread and well-known before the day McCoy was arrested.[1]  Thus, the County is granted summary judgment as to the alleged policy of inaction for probation warrants recalled under AB 1950.

For this grant of summary judgment, the Court finds that "there is no just reason for delay" of Plaintiff's ability to appeal.  *See* Fed. R. Civ. P. 54(b).  This issue is distinct and separate from the gravamen of Plaintiff's claims—that the County and the individual defendants should never have allowed Medina and McCoy to be placed in the same cell.  Allowing Plaintiff to appeal this ruling will facilitate the efficient, timely, and fair adjudication of this claim and this case.  *See Jewel v. NSA*, 810 F.3d 622, 628 (9th Cir. 2015) (explaining that Rule 54(b) is meant to avoid the injustice of delaying appellate review of an issue distinct from the remaining claims).  The Court will thus direct entry of final judgment under Rule 54(b) as to this ruling.

---

[1]  Even considering the Montoya declaration, it fails to contain any evidence proving the failure to terminate recalled warrants was widespread and well-known before McCoy's arrest.  Thus, the Court need not reach the County's objection that the declaration was not signed subject to the penalty of perjury.

22-cv-1724-BTM-SBC

**C.    Plaintiff's second cause of action against the individual defendants**.

A pretrial detainee can succeed against an individual officer on a Fourteenth Amendment failure-to-protect claim by proving that (1) the defendant made an intentional decision as to the conditions of his confinement; (2) those conditions exposed him to a substantial risk of serious harm; (3) the defendant failed to take reasonable measures to prevent that risk (such that the defendant's failure to act was objectively unreasonable and created an obvious danger); and (4) the defendant caused the injury at issue by not taking those reasonable measures. *Castro*, 833 F.3d at 1071.[2]

The qualified immunity doctrine, however, would bar Plaintiff's claims against the individual defendants unless they violated a "clearly established" constitutional right when they acted.  *Id.* at 1066.

**i.    Crystal Reeves**

Reeves, a mental health counselor, cleared Medina to be placed in general housing.  Reeves evaluated Medina on December 28 and 29.  Reeves was aware of the violent behavior underlying Medina's arrest.  Reeves knew that Medina urinated in front of a mental health professional, Sonja Taneska, on December 26.  Taneska did not feel comfortable allowing Medina to be with other inmates.  Reeves knew that Medina, while in custody, banged his head on a wall or window and yelled that he wanted to kill himself.

When Reeves assessed Medina on the 28th, he was having auditory hallucinations.  Medina thought he had voices inside his head.  Medina wanted to be housed alone because he thought other inmates wanted to harm him.  When Reeves assessed Medina again on the 29th, he was paranoid, delusional, and hallucinating.  Medina again thought that other inmates wanted to harm him.

---

[2]  The Court will hereafter use the term "reckless" as shorthand for this standard.

22-cv-1724-BTM-SBC

Viewing the facts in the light most favorable to Plaintiff, a rational jury can find Reeves reckless for clearing Medina for general housing. Reeves's decision to clear Medina for general housing allowed Medina and Mccoy to be housed together. A rational jury can thus find causation from Reeves's decision to McCoy's death at Medina's hands.

Reeves is neither entitled to summary judgment nor qualified immunity. *See Castro*, 833 F.3d at 1067 (ruling that the right to be free from violence by other inmates was clearly established and explaining that "[t[he contours of the right required only that the individual defendants take reasonable measures to mitigate the substantial risk to [the plaintiff]"); *see also Sandoval v. Cty. of San Diego*, 985 F.3d 657, 669-81 (9th Cir. 2021) (ruling that both summary judgment and qualified immunity were not warranted on claims against individual nurses for reckless medical treatment); *Wilk v. Neven*, 956 F.3d 1143, 1150 (9th Cir. 2020) ("None of the defendants can claim ignorance to a prisoner's right to be protected from violence at the hands of other inmates. That right has been clearly established since the Supreme Court's decision in *Farmer v. Brennan* in 1994. We have recently and explicitly held that it is clearly established that prison officials must take reasonable measures to mitigate the [known] substantial risk[s] to a prisoner." (quotation marks and citations omitted)); *De'Lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) ("We do, of course, acknowledge that Appellees have provided De'lonta with some measure of treatment to alleviate her GID symptoms. But just because Appellees have provided De'lonta with some treatment consistent with the GID Standards of Care, it does not follow that they have necessarily provided her with constitutionally adequate treatment." (emphases omitted)); *Foelker v. Outagamie County*, 394 F.3d 510, 513 (7th Cir. 2005) (ruling that summary judgment was not warranted and a deliberate indifference claim was triable where a nurse and social worker did not send a prisoner to the hospital when he defecated on himself and did not realize he did so).

22-cv-1724-BTM-SBC

### ii.   Deputy Daniel Cheung

Deputy Cheung assigned Medina to be placed in the same cell with McCoy. Deputy Cheung was aware of the charges Medina was facing. Deputy Cheung knew Medina was a high-risk inmate and that McCoy was a low-risk inmate. Deputy Cheung thus may have created an obvious danger by housing Medina and McCoy together. A rational jury could find that housing Medina and McCoy together was reckless and caused McCoy's death. Deputy Cheung is thus not entitled to summary judgment on liability nor qualified immunity. *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013) (noting that whether a prison official created a substantial risk of danger with no reasonable justification is a fact-sensitive inquiry inappropriate for resolution on summary judgment); *id.* at 1080 (explaining that summary judgment on causation is not warranted where reasonable people could disagree on the question); *Fargo v. San Juan Bautista*, 857 F.2d 638, 641 (9th Cir. 1988) ("When reasonable persons may disagree as to whether particular conduct constitutes negligence, gross negligence or recklessness, the question is one of fact to be decided by a jury.").

Plaintiff is not entitled to summary judgment against Deputy Cheung because the claim is fact sensitive and inappropriate for resolution before trial. *See Lemire*, 726 F.3d at 1078, 1080; *Fargo*, 857 F.2d at 641.

### iii.   Lieutenant Desan Tyson

Plaintiff claims that Lieutenant Tyson was part of the committee that allowed the adoption of the County's COVID-19 mixed-security level inmate housing policy. Plaintiff contends that Lieutenant Tyson should have objected to mixed-security inmate housing for COVID-19 quarantining.

These allegations are insufficient for a reasonable jury to hold Lieutenant Tyson liable under Plaintiff's second cause of action. In allegedly not voicing an objection to the committee, Lieutenant Tyson did not make a decision as to McCoy's conditions of confinement. Nor can Plaintiff prove causation from

Lieutenant Tyson's alleged failure to raise the issue of the dangerousness of the policy with the committee. Plaintiff has not raised a triable question over whether the committee would have acted differently if Lieutenant Tyson voiced an objection.

Indeed, Plaintiff's theory does not even fit the test for a Fourteenth Amendment failure-to-protect claim. In other words, whether a committee member objects to a proposed inmate housing plan or not does not state a Fourteenth Amendment failure-to-protect claim. *See Castro*, 833 F.3d at 1071 (setting forth standard for Fourteenth Amendment failure-to-protect claim). Lieutenant Tyson is entitled to summary judgment on Plaintiff's second cause of action. Lieutenant Tyson is also entitled to qualified immunity on this claim because no case put him on notice that his alleged inaction was contrary to a "clearly established constitutional right." *Burrell v. Board of Trustees of Ga. Military College*, 970 F.2d 785, 792 (11th Cir. 1992) ("Without a constitutional violation, there can be no violation of a clearly established constitutional right."); *accord Zorn v. Linton*, 607 U.S. ___, slip op. at 4 (2026) (per curiam) ("[O]fficers receive qualified immunity unless they could have read the relevant precedent beforehand and known that it proscribed their specific conduct." (quotation marks and brackets omitted)).

### iv.    Corporal Jacob Saelens

Corporal Saelens escorted Medina to the cell. Plaintiff contends that Corporal Saelens was reckless for failing to provide a mattress for Medina. Corporal Saelens created a risk of a fight between Medina and McCoy, Plaintiff argues, by not providing Medina a mattress. And because they fought over the sole mattress, Plaintiff contends, a reasonable jury could find causation from the failure to provide Medina a mattress to McCoy's death.

The Court agrees that a rational jury could find Corporal Saelens reckless for failing to provide Medina a mattress. A reasonable jury could find it reasonably foreseeable that two inmates would fight over the sole mattress and thus could

22-cv-1724-BTM-SBC

also find causation from Corporal Saelens's failure to provide a mattress to McCoy's death.  *See Lemire*, 726 F.3d at 1078, 1080; *Fargo*, 857 F.2d at 641.

However, Corporal Saelens is entitled to qualified immunity.  No case put Corporal Saelens on notice that he would be violating the Constitution by failing to provide Medina a mattress.  Because "officers receive qualified immunity unless they could have read the relevant precedent beforehand and known that it proscribed their specific conduct," Corporal Saelens must receive qualified immunity here.  *See Zorn*, 607 U.S. at ___, slip op. at 4; *accord Waid v. Cnty. of Lyon*, 87 F.4th 383, 387 (9th Cir. 2023) ("A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012))).

Summary judgment is denied on Corporal Saelens's statute-of-limitations defense.  Corporal Saelens claims Plaintiff had notice—from a March 2023 preliminary hearing in Medina's criminal case—of a claim against Corporal Saelens.  The hearing transcript Corporal Saelens relies on (ECF No. 67-2) does not as a matter of law give notice of a claim against Corporal Saelens.  There is a genuine dispute of material fact over when Plaintiff should have had notice of a claim against Corporal Saelens.  *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (showing that under California law a claim's accrual date is extended if the plaintiff does not have reason to know of the claim after a reasonable investigation); *Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir. 1986) (emphasizing for statute of limitations "that what [the plaintiff] knew and when she knew it are questions of fact").

**D.    Plaintiff's wrongful death claim**.

The Court agrees that the County is entitled to immunity on Plaintiff's wrongful death claim.  California generally grants, unless an exception applies, public entities immunity for claims by prisoners for their injuries.  Cal. Gov. Code §

22-cv-1724-BTM-SBC

844.6.  No exception applies here.  The County is thus entitled to immunity on Plaintiff's wrongful death claim.

Crystal Reeves's immunity claim is denied as moot.  The Court already granted the defendants immunity as to medical care.  (ECF No. 99).

Under California law, "[t]he elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs."  *Lilly v. Univ. of Cal.-San Diego*, 751 F. Supp. 3d 1056, 1081 (S.D. Cal. 2024) (citation omitted).  Lieutenant Tyson is granted judgment on this claim for the reasons set forth above.  No rational jury could find Lieutenant Tyson liable for McCoy's death.  The sole allegation against him is that he should have objected as a committee member to the adoption of mixed-security level inmate housing for COVID-19 quarantining.  As explained above, that alleged failure to object is not a tort nor a cause of McCoy's death.

Deputy Cheung and Corporal Saelens are denied judgment on this claim for the reasons set forth above.  A rational jury could find that they committed torts resulting in McCoy's death.  Deputy Cheung allegedly allowed Medina and McCoy to be placed in the same cell.  A jury could thus find him liable for McCoy's death because Medina murdered McCoy shortly after they were placed together.  Corporal Saelens allegedly caused Medina and McCoy to only have one mattress, and a jury could find that Medina murdered McCoy based on a fight over the sole mattress in the cell.  A jury could thus rationally hold Corporal Saelens liable for McCoy's death.

**E.    Severance**

The Court invited the parties to address a severance given the likelihood that Reeves and Cheung would take an interlocutory appeal of the denial of qualified immunity.  However, since the Court has certified the grant of partial summary judgment for the County, the grant of summary judgment for Tyson and the partial

summary judgment for Saelens under Federal Rule of Civil Procedure 54(b), it would create a great inefficiency to try the case in several parts. It makes more sense to see how the Court of Appeals rules and see what defendants and claims are going to trial. Therefore, although the Court is very concerned with the delay involved in interlocutory appeals, severance is DENIED without prejudice at this time.

## CONCLUSION

(1) The Defendants' motion to exclude the expert opinion of Gary Raney (109-1) is GRANTED IN PART and DENIED IN PART, without prejudice.

(2) The Defendants' motion to exclude the expert opinion of Dr. Homer Venters (110-1) is GRANTED IN PART and DENIED IN PART, without prejudice.

(3) The Defendant County's motion for partial summary judgment as to Plaintiff's *Monell* claim for a policy of inaction as to checking whether recalled probation violation warrants were actually cancelled in law enforcement data bases is GRANTED. The Court certifies that there is no just reason for delay in entering a final judgment as to this claim. The Clerk shall enter final judgment as to this claim. The County's motion for summary judgment on Count Four (wrongful death) is GRANTED. The County's motion for summary judgment is otherwise DENIED.

(4) Summary judgment is entered for Desan Tyson on both Counts Two (42 U.S.C. 1983) and Four (wrongful death). The Court certifies that there is no just reason for delay in entering a final judgment as to those claims and defendant. The Clerk shall enter final judgment as to those claims and defendant.

(5) Jacob Saelens's motion for summary judgment is GRANTED IN PART

22-cv-1724-BTM-SBC

as to Count Two (42 U.S.C. 1983) because he is granted qualified immunity and DENIED as to Count Four (wrongful death). The Court certifies that there is no just reason for delay in entering a final judgment as to Count Two. The Clerk shall enter final judgment for Defendant Saelens as to Count Two.

(6) Defendants Reeves and Cheung's motions for summary judgment are DENIED.

(7) The Plaintiff's motion for summary judgment is DENIED.

(8) Per Plaintiff's agreement at oral argument, Count Three is DISMISSED.

(9) The grant of immunity to Defendant Reeves on Count Four as to medical care shall be certified as a final judgment under Rule 54(b). There is no just reason for delay in entering a final judgment.

(10) Any motion for reconsideration must be made within twenty-one days of the entry of this order and shall not exceed ten pages. Any opposition shall be filed within fourteen days of the filing of the motion and shall not exceed ten pages. No replies.

**IT IS SO ORDERED.**

Dated: April 27, 2026

Honorable Barry Ted Moskowitz
United States District Judge

22-cv-1724-BTM-SBC